**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| Matthew M., ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | No. 3:23-cv-50020 |
| v. ) | |
| ) | Magistrate Judge Lisa A. Jensen |
| Martin O'Malley, ) | |
| Commissioner of Social Security,[1] ) | |
| ) | |
| *Defendant*. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Matthew M. brings this action under 42 U.S.C. § 405(g) seeking a remand of the decision denying his applications for disability insurance benefits and supplemental security income.[2] For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied, the Commissioner's motion for summary judgment is granted, and the ALJ's decision is affirmed.

## BACKGROUND

On March 11, 2020, Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging a disability beginning on March 1, 2018 because of irritable bowel syndrome ("IBS"), post-traumatic stress disorder ("PTSD"), attention deficit hyperactivity disorder, chronic migraines, collapsed lungs, depression, claustrophobia, and social anxiety. R. 103–04. Plaintiff was 41 years old on his alleged onset date.

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley is substituted for Kilolo Kijakazi as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c). Dkt. 6.

1

In December 2021, Plaintiff was scheduled to testify at a hearing, but he failed to appear. R. 99. The administrative law judge ("ALJ") continued the hearing and, at the request of Plaintiff's counsel, ordered a psychological consultative examination to evaluate Plaintiff's PTSD. R. 100–01. Following his psychological consultative examination, Plaintiff testified at a hearing in March 2022.

In May 2022, the ALJ issued a decision finding that Plaintiff was not disabled. R. 37–52. The ALJ found that Plaintiff had the following severe impairments: chronic abdominal pain with history of injury, depression, PTSD, and opiate use disorder. The ALJ also found that Plaintiff suffered from IBS and that his edema in his lower extremities, collapsed lungs following his accident, hypertension, prediabetes, gastroesophageal reflux disease, and obesity were non-severe impairments. The ALJ further found that Plaintiff's seizure disorder was not a medically determinable impairment. The ALJ determined that Plaintiff's impairments did not meet or medically equal a listed impairment. The ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to:

> perform medium work as defined in 20 C.F.R. § 404.1567(a), except for the following limitations. The claimant can frequently stoop, crouch, and crawl. The claimant can be exposed to no more than moderate level of noise as defined in the Selected Characteristics of Occupations (SCO). Due to moderate limits in concentration, persistence or pace, the claimant is restricted to understanding, remembering and carrying out simple instructions for simple, routine and repetitive tasks, with no fast-paced production requirements (e.g., assembly line work); is able to occasionally interact with supervisors, occasionally interact with coworkers; and is able to interact with the public on a brief/incidental basis; can have no team/tandem tasks; and is able to be exposed to no more than occasional changes in job setting.

R. 43. The ALJ determined that Plaintiff was unable to perform any past relevant work, but that there were other jobs that existed in significant numbers in the national economy that he could perform, namely medium, unskilled jobs.

2

After the Appeals Council denied Plaintiff's request for review in October 2022, R. 11, Plaintiff filed the instant action. Dkt. 1.

## STANDARD OF REVIEW

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). "An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021) (quoting *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)). The reviewing court may not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

## DISCUSSION

Plaintiff makes four arguments challenging the ALJ's RFC determination. Specifically, Plaintiff argues that the ALJ erred by failing to: (1) address all his impairment-related limitations in the RFC; (2) provide an accurate and logical bridge between the evidence and the medium RFC determination; (3) fully evaluate all his testimony related to his substantive complaints; and (4) fully develop the record.

Before addressing each of Plaintiff's arguments, this Court notes at the outset that Plaintiff's arguments in support of remand are generally conclusory and unsupported by the record.

3

Plaintiff takes issue with the ALJ's RFC determination, but the record reveals no medical source that opined to limitations greater than those adopted by the ALJ. This is critical because the Seventh Circuit has stated that "when no doctor's opinion indicates greater limitations than those found by the ALJ, there is no error." *Dudley v. Berryhill*, 773 F. App'x 838, 843 (7th Cir. 2019) (unpublished) (citing *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004)); *Gedatus v. Saul*, 994 F.3d 893, 904 (7th Cir. 2021) (finding the fact that no doctor offered any opinion setting sitting limits greater than those set by the ALJ a "fundamental problem"); *Hosea M. v. Saul*, No. 18 CV 2926, 2019 WL 5682835, at *7 (N.D. Ill. Nov. 1, 2019) ("[C]ourts within this Circuit have repeatedly held that '[t]here is no error' in the formulation of an RFC 'when there is no doctor's opinion contained in the record [that] indicates greater limitations than those found by the ALJ.'") (collecting cases). For the reasons discussed below, Plaintiff's arguments do not warrant a remand.

## I. Impairment-Related Limitations

Plaintiff argues that the ALJ erred by failing to include limitations in the RFC related to all his severe and non-severe impairments. Specifically, Plaintiff argues that the ALJ should have included limitations for: restroom breaks for his IBS; potential absences from work due to depression; kneeling and bending for his knee, leg, and abdominal problems; and additional, but unidentified, limitations related to his degenerative disc disease.

A claimant's RFC is the maximum work that he can perform despite any limitations. *See* 20 C.F.R. § 404.1545(a)(1); SSR 96-8p, 1996 WL 374184, at *2. An ALJ must base a claimant's RFC on all relevant evidence in the record, including the claimant's medical history, medical findings and opinions, reports of daily activities, and the effects of the claimant's symptoms and treatment. 20 C.F.R. § 404.1545(a)(3); SSR 96-8p, 1996 WL 374184, at *5. "Although the responsibility for the RFC assessment belongs to the ALJ, not a physician, an ALJ cannot construct

4

his own RFC finding without a proper medical ground and must explain how he has reached his conclusions." *Amey v. Astrue*, No. 09 C 2712, 2012 WL 366522, at *13 (N.D. Ill. Feb. 2, 2012) (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005)). "Essentially, an ALJ's RFC analysis 'must say enough to enable review of whether the ALJ considered the totality of a claimant's limitations.'" *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022) (quoting *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021)).

Here, the ALJ has said enough to ensure that he considered the totality of Plaintiff's limitations in formulating the RFC. As it relates to restroom breaks for Plaintiff's IBS, Plaintiff argues that the ALJ should have included a work-related limitation in the RFC because he "credibly testified that he needed to use a restroom three to five times a day and having to sit on the toilet for one hour." Pl.'s Reply at 2, Dkt. 25. Plaintiff also reported having issues at his previous jobs because of his need to use the restroom. Plaintiff argues that the ALJ failed to explain why Plaintiff's testimony was "deemed only somewhat credible and what portions of his testimony were not credible." Pl.'s Reply at 2, Dkt. 25.

However, pursuant to Social Security Ruling 16-3p, the ALJ explained that Plaintiff's statements concerning the limiting effects of his symptoms, which included his issues with using the restroom, were not entirely consistent with the evidence in the record. *See* R. 43–44. The ALJ acknowledged Plaintiff's testimony that, following a sandblasting accident in 2016[3] while working in a Naval shipyard and subsequent abdominal surgeries, his stomach was hard as a rock and he experienced constant abdominal pain and gastrointestinal issues, which requires him to use the restroom frequently and for long periods of time. But the ALJ also cited to Plaintiff's abdominal

---

[3] Throughout the record, there are references to Plaintiff's accident occurring in 2015, 2016, and 2017. *See, e.g.*, R. 546, 812, 830, 846. However, Plaintiff testified at the hearing that his accident occurred in 2016. R. 69–70.

5

examinations in September 2019, March 2021, and September 2021, which reported normal bowel sounds and an abdomen that was soft, nontender or mildly tender, and non-distended. R 45 (citing R. 509, 693, 803). A September 2019 and January 2022 CT revealed no acute abdominal or pelvic findings. R. 45 (citing R. 777, 851). The ALJ also observed that as recently as February 2022, the month before his hearing testimony, Plaintiff denied abdominal pain, changes in stool pattern, constipation, diarrhea, nausea, and vomiting. R. 45 (citing R. 847). Additionally, although Plaintiff was referred to a gastrointestinal specialist three times, he never followed up with the referrals. R. 81, 674, 816, 844. As a result, Plaintiff's treatment was limited and conservative.

Plaintiff does not address any of the evidence cited by the ALJ or point to any medical opinions supporting a work-related limitation to accommodate his need for restroom breaks. Other than his hearing testimony and his report that he had issues at his previous jobs because of his need to use the restroom, Plaintiff points to no other evidence to argue that the ALJ failed to include a necessary limitation. The ALJ only needed to include limitations in the RFC and in the hypothetical to the vocational expert that are supported by the medical record. *See Deborah M. v. Saul*, 994 F.3d 785, 791 (7th Cir. 2021); *Outlaw v. Astrue*, 412 Fed. App'x. 894, 898 (7th Cir. 2011) (unpublished) ("The ALJ needed only to include limitations in his RFC determination that were supported by the medical evidence and that the ALJ found to be credible."). The ALJ relied on evidence suggesting that Plaintiff's bowel problems were not as limiting as he had alleged, and Plaintiff has not shown that the ALJ's reliance on this evidence was improper. As such, the ALJ did not err by failing to include a limitation for restroom breaks. *See Stephens v. Berryhill*, 888 F.3d 323, 329 (7th Cir. 2018) (finding no error in failing to include a limitation for bathroom breaks where the record did not support the alleged severity of plaintiff's urinary complaints).

Plaintiff also argues the ALJ failed to include the potential for significant absences from work in the RFC due to his depression. Plaintiff contends that because he testified that he lacked motivation and stays in bed due to his depression and the ALJ asked the vocational expert about the consequences of a claimant missing two days a month of work, the ALJ erred by not explaining why he did not include this limitation in the RFC. However, an ALJ is not required to discuss every hypothetical, particularly where the hypotheticals contain limitations that were appropriately not adopted by the ALJ. *See, e.g., Kathleen C. v. Saul*, No. 19 C 1564, 2020 WL 2219047, at *6 (N.D. Ill. May 7, 2020) ("The fact that an ALJ considers adding a mental limitation to an RFC does not establish that such a limitation is ultimately warranted.").

Here, the ALJ discussed Plaintiff's symptoms of depression at length and included restrictions in the RFC that accounted for Plaintiff's symptoms. Although the ALJ acknowledged Plaintiff's testimony that he lacked motivation and stayed in bed because of depression, the ALJ also observed that the record did not support the conclusion that Plaintiff's depression was completely disabling. R. 44, 74. In formulating the RFC, the ALJ noted that Plaintiff's mental health treatment was sporadic and inconsistent, but that the record showed Plaintiff's improvement with treatment and normal examination findings, including being alert and oriented, being cooperative, appropriate mood and affect, logical thought processes, and cognition and judgment within normal limits, despite reports of depression. *See* R. 46–47. The ALJ also cited Plaintiff's activities of daily living in helping with meals, laundry, and loading the dishwasher, and being able to drive, go out alone, and attend certain school activities. R. 42, 48. Plaintiff does not argue that the ALJ's decision to discount the disabling effects of his depression based on the evidence cited in the decision was patently wrong. Plaintiff also does not point to any medical source opining that his depression would cause him to miss work two days a month. Based on the evidence in the

7

record and the lack of a medical source opining that Plaintiff would be absent from work two days a month, the ALJ's conclusion that no greater limitations in the RFC were warranted for Plaintiff's depression is supported by substantial evidence.

Next, Plaintiff argues that because he was diagnosed with bilateral leg venous insufficiency, popliteal cysts, and chronic abdominal pain and reported difficulty with kneeling and bending, the ALJ should have included limitations for kneeling and bending in the RFC. Dkt. 18-3 at 10. However, the ALJ concluded that Plaintiff's edema in the lower extremities bilaterally status post left lower extremity deep vein thrombosis was not severe and did not have more than a minimal effect on Plaintiff's ability to perform basic work activities. R. 40. The ALJ cited to a venous duplex revealing no deep or superficial reflux and, despite popliteal cysts identified in both legs, no vascular intervention was recommended. R. 40 (citing R. 588). Examinations revealed good range of motion in the hips and knees with no motor or neurological abnormalities. R. 585, 588. Plaintiff also testified that his condition improved with medication, and he was told that his cysts would dissipate on their own. R. 40 (citing R. 86-87).

Additionally, although the ALJ found Plaintiff's chronic abdominal pain to be a severe impairment, he also noted that the record contained evidence that treatment, though limited and conservative, had been helpful and effective in controlling Plaintiff's abdominal pain. For example, the ALJ observed that Plaintiff denied abdominal pain during medical visits in April 2019, March 2021, May 2021, September 2021, and February 2022. R 45 (citing R. 441, 538, 564, 584, 594, 801, 847, 955). Plaintiff's abdominal examinations in 2019 and 2021 also showed his abdomen was soft and nontender, no guarding, no masses or organomegaly, and he had normal range of motion and strength. R 45–46 (citing R. 509, 565, 693, 803). The ALJ also observed that, as recently as February 2022, Plaintiff reported that he had no abdominal pain or tenderness and

8

exercised regularly. R. 840, 842, 847. Moreover, despite complaints of abdominal pain, the ALJ noted that Plaintiff was referred to a gastrointestinal specialist three times, but he did not make an appointment. R. 81, 674, 816, 844. Plaintiff does not address any of the evidence cited by the ALJ or argue that it was improper to rely on in finding no greater limitations in the RFC were warranted.

Lastly, Plaintiff argues that the ALJ failed to consider limitations related to his degenerative disc disease. Plaintiff points to his complaints of back pain in September 2018 following a car accident, his diagnosis with mild degenerative disc disease in January 2022, and his hearing testimony that he has "a lot of back issues lately, and I don't know why that is." R. 87. But again, Plaintiff does not identify what limitations related to his back problems that the ALJ failed to include in the RFC. *See Olsen v. Colvin*, 551 F. App'x 868, 875 (7th Cir. 2014) (noting that the claimant has the "burden to show that the ALJ's decision is not supported by substantial evidence") (unpublished). As the Commissioner points out, Plaintiff has the burden to establish "not just the existence of the conditions, but to provide evidence that they support specific limitations affecting h[is] capacity to work." *Weaver v. Berryhill*, 746 F. App'x 574, 579 (7th Cir. 2018) (unpublished); *see also* 20 C.F.R. § 404.1512(a). Where no medical source opined that Plaintiff's diagnosis affected his functioning, Plaintiff's conclusory argument alone does not establish reversible error. *See, e.g., Lawrence P. v. Saul,* No. 18-CV-5763, 2019 WL 3554451, at *5 (N.D. Ill. Aug. 5, 2019) ("But Plaintiff fails to identify how these exam findings translate into any functional limitations."); *see also Karla J.B. v. Saul*, No. 19 CV 50019, 2020 WL 3050220, at *8 (N.D. Ill. Jun. 8, 2020) ("The fact that none of Plaintiff's doctors opined that she was unable to work (or, in this case, suggested that she required any functional limitations caused by tremors at all) is a valid reason to discount a claimant's subjective complaints.").

II.     **Medium Exertional Work**

Plaintiff argues that the ALJ failed to build an accurate and logical bridge between the evidence and his determination that Plaintiff had the RFC to perform medium work. In support, Plaintiff claims that because the ALJ rejected all medical opinion evidence related to his physical impairments, the ALJ formulated the RFC by playing doctor and "evaluat[ing] and interpret[ing] the medical evidence, including testing, MRI's and surgical reports, himself." Pl.'s Mot. at 12, Dkt. 18-3. Accordingly, Plaintiff argues that a remand is required because the "ALJ is required to state which opinions he is relying upon in building his RFC." *Id.* at 14.

Although Plaintiff argues that the ALJ rejected all opinion evidence related to his physical impairment, the ALJ gave partial weight to the only medical opinion addressing Plaintiff's physical limitations. State agency reviewing physician James Hinchen, M.D. opined that Plaintiff's physical impairments were non-severe and that Plaintiff had the RFC to perform heavy/very heavy work. R. 103–117. The ALJ found that while Dr. Hinchen "supported his findings with an explanation based on a review of the evidence, his findings are only partially consistent to the extent that they support a number of non-severe physical impairments." R. 48. The ALJ further found that based on the longitudinal record, sufficient evidence existed to establish a severe impairment of chronic abdominal pain and reduced Plaintiff to medium exertional work.

Contrary to Plaintiff's argument, it was not improper for the ALJ to have rendered an RFC determination that differed from that which the state agency physician recommended. *See McReynolds v. Berryhill*, 341 F. Supp. 3d 869, 881 (N.D. Ill. 2018) (finding "no evidentiary deficit" where the ALJ partially relies on agency consultants' opinions but incorporates additional limitations). The ALJ was not required to rely entirely on a particular physician's opinion as long as the RFC determination is based on medical evidence and adequately explained. *See Amey*, 2012 WL 366522, at *13; *Colleen M. v. Saul*, No. 19 C 1287, 2021 WL 822934, at *9 (N.D. Ill. Mar. 4,

10

2021) (stating that an ALJ must "consider the entire record, but the ALJ is not required to rely entirely on a particular physician's opinion"). Here, in support of the medium exertional RFC, the ALJ pointed to exam findings from 2019 and 2021 demonstrating normal range of motion and strength and from 2022 reporting that Plaintiff was able to move all extremities spontaneously with no motor deficits. R. 45–46 (citing R. 509, 518, 693, 814, 860). The ALJ also pointed to Plaintiff's activities of daily living, including helping with meals, driving, exercising regularly, and shoveling snow. R. 48.

Plaintiff does not address the evidence the ALJ relied on in formulating the medium RFC and instead relies on *Edward W. v. Comm'r of Soc. Sec.*, No. 18 CV 1454, 2020 WL 2839283 (C.D. Ill. June 1, 2020) to argue the ALJ should have obtained an updated medical opinion instead of interpreting the medical evidence himself. Although Plaintiff complains to this Court that the ALJ failed to obtain an updated medical opinion, Plaintiff's counsel previously declined the ALJ's suggestion to order a physical consultative examination. At the initial hearing when Plaintiff failed to appear, the ALJ asked Plaintiff's counsel if a physical consultative examination was necessary. Plaintiff's counsel said no because "he is a younger person here. Most of his physical treatment was back in 2015 for that industrial accident." R. 101.

Regardless, Plaintiff's reliance on *Edward* is misplaced. In *Edward*, the court remanded the matter, in part, because the ALJ relied on a plethora of complex MRI, CT, and x-ray results that agency physicians did not review and "expressly stated that her RFC finding supplanted that of the State Agency." *Edward*, 2019 WL 10372484, at *7 (C.D. Ill. Dec. 20, 2019), report and recommendation adopted, No. 1:18-CV-1454-JES-JEH, 2020 WL 2839283 (C.D. Ill. June 1, 2020). Here, the ALJ relied in part on the state agency physician's opinion in formulating the RFC and Plaintiff points to no examples of the ALJ engaging in a "lay person interpretation of raw

11

medical data" to support his RFC analysis. Pl.'s Mot. at 13, Dkt. 18-3. An ALJ plays doctor when he "interprets 'new and potentially decisive medical evidence' without medical scrutiny." *McHenry v. Berryhill*, 911 F. 3d 866, 871 (7th Cir. 2018) (quoting *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014)). Without pointing to any new and potentially decisive medical evidence that the ALJ improperly interpreted, Plaintiff has not shown that the ALJ's RFC determination is not supported by substantial evidence. *See Olsen*, 551 F. App'x at 875 (noting that the claimant has the "burden to show that the ALJ's decision is not supported by substantial evidence"); *Tutwiler v. Kijakazi*, 87 F.4th 853, 859–60 (7th Cir. 2023) (stating that the ALJ's "careful consideration" of the evidence was "shown by the fact that he departed from the residual functional capacity recommended by the state agency physicians…based on his independent review of the full evidentiary record"); *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (stating that an ALJ's RFC finding that "was more limiting than that of any state agency doctor or psychologist" illustrated "reasoned consideration given to the evidence [the claimant] presented").

**III.     Subjective Symptoms Analysis**

Plaintiff next argues that the ALJ failed to fully evaluate Plaintiff's testimony regarding his PTSD and that he experienced stress-induced seizures.

When assessing a claimant's subjective symptom allegations, an ALJ considers several factors, including the objective medical evidence, the claimant's daily activities, his level of pain or symptoms, aggravating factors, medication, course of treatment, and functional limitations. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *5–8. "As long as an ALJ gives specific reasons supported by the record, [the Court] will not overturn a credibility determination unless it is patently wrong." *Grotts v. Kijakazi*, 27 F.4th 1273, 1279 (7th Cir. 2022). An ALJ's assessment is patently wrong if the decision lacks any explanation or support. *Cullinan v. Berryhill*,

878 F.3d 598, 603 (7th Cir. 2017). Not all of the ALJ's reasons must be valid in a subjective symptom analysis, "as long as *enough* of them are." *Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009) (unpublished) (emphasis in original).

Here, the ALJ's evaluation of Plaintiff's symptoms was adequately supported with evidence and explanation. The ALJ discussed Plaintiff's testimony that following his sandblasting accident, he experiences panic attacks, struggles to get out of bed, experiences nightmares, and that certain smells and sounds are triggers. R. 44. Plaintiff had difficulty being in confined spaces, being around crowds, and that he has "a very short fuse now," even in one-on-one interactions with his close family members. R. 72-73. Plaintiff also testified to suffering from "stress-induced seizures" and being unable to get out of bed for four or five days at a time due to his depression. R. 74–76, 362.

However, similar to Plaintiff's symptoms of depression, the ALJ determined that while the record supported Plaintiff's complaints of PTSD, the record also indicated that his symptoms were not a disabling as alleged. The ALJ relied on records showing Plaintiff's improvement with medications and therapy, normal mental health examination findings despite reports of PTSD symptoms, and no evidence of psychiatric hospitalizations or treatment recommendations for inpatient psychiatric hospitalizations. R. 46–47. The ALJ also cited to Plaintiff's ability to spend time with others, attend certain school events, cooperate with his providers, drive, and go out alone. R. 42.

Again, Plaintiff does not argue that the ALJ's decision to discount the disabling effects of his PTSD based on the evidence cited in the decision was patently wrong. Additionally, Plaintiff does not argue that the ALJ failed to evaluate any line evidence in the record. Instead, Plaintiff argues that the ALJ improperly discounted his subjective complaints based on the waxing and

13

waning nature of his PTSD. However, in addition to Plaintiff's reported symptoms, the ALJ also considered and gave partial weight to the medical opinions from the agency reviewing psychologist and consultative examiner in evaluating Plaintiff's symptoms and limitations. State agency psychologist Thomas Low, Ph.D. opined that Plaintiff's severe PTSD resulted in mild and moderate impairments in mental functioning, with moderate difficulty in concentration and social interaction. R. 109. The consultative examiner found that Plaintiff's PTSD symptoms resulted in mild and moderate impairments in mental functioning and may impact his ability to focus at work, work in a fast-paced environment, get along with others, and work with the public in general. R 49; R. 832. The ALJ gave these opinions partial weight, finding that Plaintiff's treatment history and mental status examinations supported moderate limitations in all paragraph B criteria, instead of the mild limitations outlined in the psychologists' opinions. Accordingly, the ALJ relied on these opinions in formulating the RFC and accounting for the identified limitations regarding Plaintiff's PTSD.

Plaintiff also alleges the ALJ improperly discounted his allegations of stress-induced seizures "solely because Plaintiff did not undergo any EEG testing." Dkt. 18-3 at 18. However, Plaintiff does not dispute that the ALJ properly found that he did not have a medically determinable impairment of seizures. As the ALJ explained in his opinion, a medically determinable impairment cannot be established solely based on symptoms or allegations regarding symptomology. R 40–41. The ALJ further explained that there must be objective medical evidence from an acceptable medical source that shows Plaintiff has a medically determinable impairment which could reasonably be expected to produce the alleged symptoms. R. 41 (citing 20 C.F.R. § 404.1529; SSR 16-3p). The ALJ noted that although Plaintiff had been referred to neurology for evaluation and treatment in September 2021 for his seizures, he had never seen a neurologist. R. 40-41; R. 79,

14

815–16. Accordingly, the record did not contain any medical signs or laboratory findings to substantiate the existence of a medically determinable impairment of seizures. Therefore, substantial evidence supports the ALJ's decision not to include limitations related to seizures in Plaintiff's RFC.

Plaintiff then suggests that his allegation of seizures may be a symptom of a panic attack, which would further support his symptoms of PTSD. Plaintiff argues that the ALJ failed to consider this alternative, "logical and medically supported explanation for the Plaintiff's allegations of seizure disorder." Pl.'s Mot. at 18, Dkt. 18-3. In support, Plaintiff points to discharge paperwork that notes symptoms of PTSD include physical reactions such as increased heart rate and shortness of breath, and states that medical providers "recognized the[] symptoms of a panic attack and provided Plaintiff with educational materials about that condition." Pl.'s Mot. at 18, Dkt 18-3 (citing R. 676). However, Plaintiff does not point to any medical source or other evidence in the record to support his argument that stress-induced seizures are a symptom of his PTSD. *See Carolyn L. M. v. Kijakazi*, No. 1:21-CV-229, 2022 WL 2438042, at *4 (N.D. Ind. July 5, 2022) ("The Court cannot remand a case because a claimant wishes the ALJ had engaged in speculation regarding her hypertension, as there is no evidence in the record to support her assertions."); *see also White ex rel. Smith v. Apfel*, 167 F.3d 369, 375 (7th Cir. 1999) ("Speculation is, of course, no substitute for evidence, and a decision based on speculation is not supported by substantial evidence.").

The ALJ sufficiently evaluated Plaintiff's subjective symptoms related to his PTSD and included limitations supported by the record. *See* 20 C.F.R. § 404.1529(c)(4) (stating that the ALJ is empowered to determine whether a claimant's subjective complaints are supported by medical evidence and, if not, the ALJ may discount the claimed degree and severity of the alleged

15

symptoms). Accordingly, the ALJ's subjective symptom analysis is not patently wrong, and thus, a remand is not warranted on this ground.

IV. **Development of the Record**

Lastly, Plaintiff argues that the ALJ erred by failing to obtain medical records related to Plaintiff's sandblasting accident and order a physical consultative examination before rendering his decision. According to Plaintiff, the accident may have been the precipitating event that led to his disability application, and consequently, the sandblasting records "are more than pertinent to understanding plaintiff's current impairment-related limitations and necessary for the ALJ to formulate an appropriate RFC." Pl.'s Mot. at 21, Dkt. 18-3. Plaintiff also quotes the ALJ's statement that there was a "lack of any opinions that are going to be helpful here," *id.* (citing R. 101), to argue that the ALJ recognized the need for additional evidence.

Both a claimant and an ALJ have duties to prepare a medical record. A claimant has the principal duty to submit evidence relating to the disability claim. 20 C.F.R. § 404.1512(a)(1). An ALJ "has a duty to develop a full and fair record." *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009). An ALJ must ensure that the claimant's record contains enough information to assess the claimant's RFC and to make a disability determination. *See* 20 C.F.R. § 404.1512(b); SSR 96–8p; *Skinner v. Astrue,* 478 F.3d 836, 843–44 (7th Cir. 2007).

Here, the ALJ satisfied his duty to develop a full and fair record. Although the record does not contain the records relating to Plaintiff's sandblasting accident, Plaintiff does not explain why the ALJ needed those records to render a disability decision. At no point during either hearing did Plaintiff's counsel alert the ALJ to an issue with not having these records. Instead, Plaintiff's counsel dismissed the need for a physical consultative examination because Plaintiff "is a younger person here. Most of his physical treatment was back in 2015 for that industrial accident." R. 101.

16

Even after the ALJ left the record open after the March 2022 hearing so that Plaintiff could submit additional medical evidence, Plaintiff did not submit records relating to his sandblasting accident or request any additional evaluation of Plaintiff's impairments. Plaintiff was represented by counsel throughout the proceedings, and thus, is presumed to have made his best possible case. *See Bertaud v. O'Malley*, 88 F.4th 1242, 1245 (7th Cir. 2023) (stating that an ALJ's duty to develop the record "is lower when a lawyer makes the claimant's case for him").

Regarding a consultative examination, as stated above, when the ALJ agreed to Plaintiff's counsel's request for a psychological consultative examination and asked whether a physical consultative examination would also be necessary, counsel said no. R. 101. The ALJ then stated that he would postpone the hearing, "given the lack of opinions that are going to be helpful here and the need for at least a consultative examination." R. 101. Contrary to Plaintiff's argument, the ALJ was in no way conceding that a physical consultative examination was necessary and was instead commenting on the need for a psychological examination. Plaintiff merely speculates that a physical consultative examination may include more significant limitations than the RFC crafted by the ALJ but provides no support for why it was necessary to determine Plaintiff's RFC. "Mere conjecture or speculation that additional evidence might have been obtained in [a] case is insufficient to warrant a remand." *Orienti v. Astrue*, 958 F. Supp. 2d 961, 974 (N.D. Ill. 2013) (quoting *Binion v. Shalala*, 13 F.3d 243, 246 (7th Cir. 1994)); *Howell v. Sullivan*, 950 F.2d 343, 348 (7th Cir. 1991) ("[C]onsultative examinations are not required unless they are necessary for the ALJ to make a disability determination.").

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is denied, the Commissioner's motion for summary judgment is granted, and the ALJ's decision is affirmed.

Date: April 9, 2024  By: _____
Lisa A. Jensen
United States Magistrate Judge